UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:13-cv-00338-MOC

| | | |
|---|---|---|
| **JOHN PAUL TROUGHTON,** | ) | |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF DECISION |
| | ) | and |
| v. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court upon Plaintiff's Motion for Summary Judgment and

the Commissioner's Motion for Summary Judgment. Having carefully considered such motions

and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. ADMINISTRATIVE HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security

income on June 11, 2010, alleging disability beginning on December 31, 2008. Both claims were

initially denied on November 18, 2010, and upon reconsideration on September 5, 2011. Plaintiff

requested and was granted a hearing before an administrative law judge ("ALJ") on both claims.

After conducting a hearing on May 18, 2012, the ALJ issued a decision which was unfavorable

to Plaintiff, from which Plaintiff appealed to the Appeals Council. The Appeals Council denied

Plaintiff's request for review of the ALJ's decision, making it the final decision of the

Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action.

## II.    FACTUAL BACKGROUND

On the alleged onset date of December 31, 2008, Plaintiff was 45 years of age. Plaintiff completed one year of college and previously worked as a cook, stock clerk, and self-employed floor coverer. Plaintiff reported that his last day of work as a floor coverer was the onset date. Plaintiff was last insured on March 31, 2011. Plaintiff alleges that he became disabled from all forms of substantial gainful employment due to bipolar I disorder, hypertension, and alcohol dependence. In supporting his disability claim and inability to work, claimant explained numerous medical conditions and related treatment procedures.

In terms of mental health conditions, Plaintiff has been diagnosed with bipolar disorder, anxiety disorder, and substance abuse conditions, including alcohol dependence. Since 2008, he has been hospitalized at least four times for various reasons related to both his mental health and his alcoholism. In that time, Plaintiff has been intermittently homeless. Plaintiff has sought treatment for his mental health issues and alcohol dependence at several facilities in North Carolina. Plaintiff has been prescribed several types of drugs as part of his psychiatric treatment. In terms of physical ailments, the record indicates that Plaintiff has tendonitis in his left ankle, a herniated disc, gout, and chronic back pain.

In February 2010, Plaintiff was referred to an "Assertive Community Treatment Team" (ACTT), which has since assisted with his daily functioning and helped him manage his medications, obtain psychiatric treatment, and secure safe housing. Through ACTT, Plaintiff received psychiatric treatment from Dr. Matthew Holmes from March 2010 through late summer 2011, and from Dr. Antonio Bird from fall 2011 through the date of decision. Both doctors completed mental functional capacity questionnaires for Plaintiff in May 2012 in relation to Plaintiff's disability claim.

In his questionnaire, Dr. Bird noted Plaintiff's bipolar disorder, history of alcohol dependence, and current depression and anxiety disorders. Administrative Transcript ("Tr.") at 802. He also noted Plaintiff's history of full blown manic episodes, including increased energy, irritability, decreased need for sleep, and a tendency to get into fights. He noted that Plaintiff was somewhat responsive to medications for mood stabilization, though he could not always afford them. Id. Dr. Bird opined Plaintiff was unable to meet competitive standards in the following categories relevant to unskilled work: remembering work-like procedures; maintaining regular attendance and being punctual within strict, customary tolerances; working in proximity to others without being unduly distracted; making simple work-related decisions; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; and responding appropriately to change in a routine setting. Id. at 804. He also opined that Plaintiff had no useful ability to function with respect to the following: maintaining attention for a two-hour segment; completing a normal workday or work week without interruptions from psychologically based symptoms; performing at a consistent pace without unreasonable rest; and dealing with normal work stress. Id. He opined Plaintiff could not perform any semiskilled or skilled work. Id.

Dr. Holmes also outlined Plaintiff's limitations resulting from bipolar disorder and alcohol dependence, noting irritability, depressive episodes, irregular sleep patterns, and suicidal ideation leading to inpatient care admission. Id. at 809. Dr. Holmes placed restrictions similar to those of Dr. Bird on Plaintiff's ability to meet competitive standards relevant to unskilled work. He opined that Plaintiff would be unable to meet competitive standards with respect to the following: maintaining attention for a two hour segment; sustaining an ordinary routine without special supervision; accepting instructions and responding appropriately to criticism from

supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and dealing with normal work-related stress. Id. at 811. He opined Plaintiff had no useful ability to maintain regular attendance and be punctual within customary tolerances or to complete a normal workday or workweek without interruption from psychologically based symptoms. Id.

Drs. Antoinette Wall and Anthony G. Carraway, employed through the state Disability Determination Services, assessed Plaintiff via consultative exams in July 2011. Dr. Wall (general practitioner) focused her exam primarily on Plaintiff's physical health; she noted that Plaintiff had normal ranges of motion and grip strength and took note of Plaintiff's medical history, medications, and current complaints of bipolar disorder, substance abuse, hypertension, gouty arthritis, and back pain. Tr. at 475. Dr. Carraway (psychiatrist and neurologist) observed that Plaintiff had normal speech, good eye contact, logical thoughts, and average intellectual functioning. Id. at 477-80. He also opined that Plaintiff had mild impairment in the following: short-term memory, attention and concentration, social and interpersonal functioning, stress tolerance, and his ability to understand, retain, and perform simple instructions. Id.

### III. STANDARD OF REVIEW

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed

against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456.

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the Rule 56(c) standard." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir.2011); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (the Court reviews each motion separately on its own merits in order to "determine whether either party deserves judgment as a matter of law") (internal citations omitted).

## IV.  SUBSTANTIAL EVIDENCE ANALYSIS

### A.  Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely considered the decision of the ALJ in light of the record, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The court finds that the final decision is not supported by substantial evidence.

### B.  Sequential Evaluation

An individual is considered disabled for the purposes of disability benefits if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A). A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.   An individual who does not have a "severe impairment" will not be found to be disabled;

c.   If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.   If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.   If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b) - (f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir.1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

## C.  The Administrative Decision

With an alleged onset date of December 31, 2008, the issue before the ALJ was whether Plaintiff was disabled between that date through the date of decision, July 17, 2012.  At the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  At step two, the ALJ found that Plaintiff's conditions of chronic low back pain, herniated disc in his lower back, gouty arthritis, affective mood disorder, and anxiety disorder all amounted to severe impairments. At step three, the ALJ determined Plaintiff had no impairment or combination of impairments that met or medically equaled any impairments in the regulatory listings. In assessing Plaintiff's mental impairments at the third step, the ALJ

concluded that Plaintiff suffered from a mild restriction in his activities of daily living, and moderate difficulties with social functioning, concentration, persistence, and pace. The ALJ further found that Plaintiff had experienced one to two episodes of decompensation of extended duration, but that they did not qualify as "repeated" episodes under the governing regulations. The ALJ concluded that Plaintiff's mental impairments did not meet the criteria listings under the governing regulations. See Tr. at 18-19, referring to 20 C.F.R. § 404, app. 1 Listings 12.04, 12.06, 12.09.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") and found he could perform work of a medium exertion level, limited to simple, routine, repetitive tasks in a work environment that allows for "frequent positional changes." Tr. at 19. The ALJ noted that Plaintiff is better suited for such tasks that involve "working…with things rather than people and no interaction with the public." Id. At step four, the ALJ concluded that Plaintiff was able to perform past relevant work as a stock clerk, but unable to perform past work as a cook or floor coverer. Id. at 25. The ALJ proceeded to step five in the alternative and found that considering Plaintiff's age, education, work experience, and RFC, other jobs existed in the national economy that Plaintiff would be able to perform. Id. at 26. The vocational expert who testified at Plaintiff's hearing stated that given these factors, Plaintiff was capable of performing several simple, medium-level occupations, including janitor, groundskeeper, and kitchen helper. Id. Accordingly, the ALJ found Plaintiff not disabled. Id. at 26. It is also significant in the context of this review of the ALJ's determination that, at the hearing, the vocational expert testified that if the non-exertional limitations provided by Drs. Bird and Holmes in their mental functioning capacity questionnaires were accurate, there would be no jobs available to Plaintiff. Id. at 50.

Similarly, she testified that there would be no jobs available to Plaintiff if all of his testimony at his hearing was accurate and true. Id. at 48.

### D. Discussion

#### 1. *Plaintiff's Assignments of Error*

Plaintiff seeks review of the Commissioner's final administrative decision, alleging:

i.   The RFC is unsupported by substantial evidence because the ALJ erred in according inadequate weight to the opinions from treating psychiatrists Drs. Bird and Holmes;

ii.  The ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in evaluating Plaintiff's credibility; and

iii. The ALJ's findings at Steps 4 and 5 are unsupported by substantial evidence because the ALJ erred in relying on vocational expert testimony elicited in response to an incomplete hypothetical question.

Plaintiff's assignments of error will be discussed *seriatim*.

#### 2. *First Assignment of Error: Weight to Opinion Evidence*

Plaintiff first alleges that the ALJ erred in according inadequate weight to the opinions from treating psychiatrists Drs. Bird and Holmes and that as a result, the RFC is unsupported by substantial evidence.

An ALJ must evaluate every medical opinion in the record. See 20 C.F.R. § 404.1527(c). Under the governing regulations, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R § 416.927). A "treating physician" is a physician who has observed the Plaintiff's condition over a prolonged period of time. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). "Although the treating physician rule generally requires a court to accord greater weight

to the testimony of a treating physician … The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992), as amended (May 5, 1993) (internal citations omitted). If a treating physician's opinion is not given controlling weight, the ALJ is obligated to evaluate and weigh the medical opinion pursuant to the following factors: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir .2005) (citing 20 C.F.R. § 404.1527 (2005))).

If the ALJ does not accord controlling weight to a treating source's opinion, he must "give good reasons" for doing so. 20 C.F.R. §§ 404.1527(d)(2), 416.927(c)(1)(2). The ALJ's explanation of these "good reasons" "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996). "[F]ederal courts have remanded decisions of the Commissioner when they fail to articulate 'good reasons' for discrediting the opinion of a treating source, as expressly required by 20 C.F.R. § 404.1527(d)(2)." Newhart v. Colvin, 6:13-CV-01606, 2014 WL 1330929 (S.D.W. Va. Mar. 31, 2014). See also Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the

weight assigned to a treating physician's opinion."); Slayton v. Apfel, 175 F.3d 1016, at *3 (4th Cir.1999) (remand appropriate where "ALJ did not indicate the weight given to the findings of each of the treating physicians"); Stroup v. Apfel, 205 F.3d 1334, at *6 (4th Cir. 2000) ("Because the ALJ did not explain adequately why the reports of [other physicians] were a sufficient basis for rejecting [the treating physician]'s opinion, we cannot determine whether the ALJ properly rejected [the] treating physician's opinion 'as inconsistent with the other substantial evidence in the record.' We therefore must remand the case to the ALJ for a new hearing.'" (quoting 20 C.F.R. § 404.1527)).

Here, the ALJ gave little weight to the medical opinions of Plaintiff's treating physicians, who opined that Plaintiff had extreme limitations on his ability to perform work activity. The ALJ gave "great weight" to the consultative examiners employed by the State Disability Determination Services, who opined that Plaintiff's limitations were less severe.

The court first addresses the opinions of the treating physicians. Dr. Holmes provided mental health treatment for Plaintiff from February 2010 through the fall of 2011. Dr. Bird provided mental health treatment for Plaintiff from August 2011 through the date of decision in July 2012. Both doctors saw Plaintiff routinely (about once a month). Because they observed Plaintiff's condition over prolonged periods of time, Drs. Holmes and Bird are "treating physicians" under the governing regulations. Both doctors diagnosed Plaintiff with bipolar I disorder and alcohol dependence. Both doctors opined that Plaintiff was limited in his ability to perform unskilled work, unable to maintain socially appropriate behavior in the workplace, and would be unable to meet competitive standards in many areas of unskilled work. Tr. at 802-06; 809-13. Drs. Bird and Holmes did, however, offer different opinions as to whether Plaintiff would be able to manage benefits in his own interest Id. at 806, 813.

As noted above, an ALJ may give less weight to the testimony of a treating physician if persuasive contrary evidence exists. Here, the ALJ gave less weight to the treating physicians but failed to state why other evidence in the record was more persuasive. In explaining why he gave little weight to the opinions of Drs. Bird and Holmes, the ALJ stated, "their opinions are not consistent with other medical evidence of record [sic] even their own treatment records." Id. at 23. Evaluating the consistency of evidence is an appropriate factor to consider when giving less weight to a treating physician. See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R § 416.927). The reasons that the ALJ offers in support of his conclusion of inconsistency between the treating physicians' opinions and other substantial evidence of record include: 1) Dr. Bird stated that Plaintiff was in inpatient care due to his severe mental condition,[1] but the medical record indicated that the majority of the admissions were due to alcohol abuse; 2) Drs. Bird and Holmes reached different conclusions about whether Plaintiff would be able to manage his own finances; 3) Drs. Bird and Holmes placed extreme limitations on claimant's ability to work, but the claimant reported that he would like to start attending classes, obtain a degree, and get his driver's license. 4) Dr. Bird stated that Plaintiff could not always afford his medications, but Plaintiff often had enough funds to purchase alcohol and cigarettes, and 5) "if [Plaintiff] were as limited as Dr. Bird and Dr. Holmes opined[,] he would be unable to live alone." Tr. at 23-24.

In reviewing these proffered reasons for affording the treating physicians' opinions less weight, the court notes that only the first reason points to other medical evidence in the record. Moreover, the record indicates that Plaintiff was hospitalized on several occasions due to both

---

[1] The court notes that the ALJ improperly attributed statements regarding Plaintiff's inpatient treatment to Dr. Bird. Treating physician Dr. Holmes, in fact, made the relevant statement. Tr. at 809. While the ALJ's factual analysis was not likely altered due to this mistake, the court finds the error troubling in that it indicates a lack of attention to medical evidence and the record as a whole.

substance abuse and mental instability. See, e.g., Id. at 229 (inpatient hospital record stating that Plaintiff had been drinking heavily and made suicidal threats, reported manic behavior); Id. at 235 (Plaintiff's chief complaint at inpatient admission was suicidal ideation). Thus, Dr. Holmes' statement that Plaintiff received inpatient care for his mental condition is, in fact, consistent with the record. The other four reasons offered as inconsistencies do not reference medical evidence or explain why the allegedly inconsistent statements are overcome by other, more persuasive substantial evidence in the record. At best, the reasons cited are factual discrepancies which, while worthy of note, are not so conflicting as to render the treating physicians' opinions inaccurate or unreliable without further explanation. The court finds that the ALJ has not provided "good reasons" for discounting the opinions of the treating physicians. See 20 C.F.R. § 416.927(c)(1)(2).

Moreover, the ALJ made no mention of any other applicable factor relevant to a determination of how much weight to afford the treating physicians. Here, the treating physicians were specialists in the field of psychiatry who both examined Plaintiff several times and had a relatively well-developed treatment relationship with him. Aside from the reasons cited above, the ALJ made no findings about the supportability of the physicians' opinions or explained how other medical evidence in the record contradicted their findings. See Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Without explanation, the ALJ implied that the treating physicians fabricated their reports of Plaintiff's mental condition out of sympathy or in order to avoid doctor/patient tension. Tr. at 24. The ALJ did not, however cite any evidence even remotely suggesting such impropriety. The court finds that the ALJ failed to properly explain his rationale for declining to give the treating physicians' opinions controlling weight, as required under governing standards.

The court next addresses the medical opinions of consultative examiners Drs. Wall and Carraway. "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Commissioner]." 20 C.F.R. § 404.1527(e)(2)(ii). In explaining why he gave great weight to consultative examiners Drs. Wall and Carraway, the ALJ simply stated:

> Medical [sic] acceptable clinical findings and laboratory diagnostic techniques support Dr. Wall's opinion in Exhibit 13F and the undersigned gave it great weight.

> Medical signs and findings support Dr. Carraway's opinion in 14F and it is consistent with other medical evidence of record. Therefore, the undersigned [ALJ] gave Dr. Carraway's opinion great weight.

Tr. at 24. Without further explanation, the court finds such statements conclusory and unhelpful. It is a reviewing court's job to ensure that the ALJ based his decision on substantial evidence.

> A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

Here, the ALJ has not offered sufficient reasoning to support his conclusions. The ALJ summarizes facts from the record, cites the applicable legal standards, but then analyzes the facts under the legal standards in a manner that makes it difficult for the court to ascertain how the ALJ arrived at his conclusion. In essence, the ALJ decision makes all the right statements under

the applicable standards in finding Plaintiff disabled, but fails to clearly state how he formulated this determination given the facts in the record. Without further explanation of why the ALJ discredited the medical evidence of Plaintiff's treating physicians and assigned greater weight to the consultative examiners, the court cannot conduct a meaningful review of Plaintiff's claim and cannot find that the ALJ's decision was based on substantial evidence.

The court agrees with Plaintiff's first assignment of error and will remand this matter to the ALJ for further explanation on the issue of evaluating opinion evidence of Plaintiff's mental and physical conditions relevant to disability.

### 3. *Second Assignment of Error: Plaintiff's Credibility*

Plaintiff alleges that in formulating the RFC, the ALJ erred in evaluating Plaintiff's credibility and that his credibility determination is unsupported by substantial evidence.

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

In reviewing Plaintiff's claim regarding the ALJ's credibility determination, the court notes at the outset that because the ALJ "had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329

(4th Cir. 1990) (Hyatt III), which held that "[b]ecause pain is not readily susceptible of objective proof…the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating such a subjective complaint was developed by the Court of Appeals for the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioner's relevant rulings and regulations. See 20 C.F.R § 404.1529; SSR 96-7p.[2]

The first step requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594. If the ALJ finds such an impairment, he must then proceed to the second step and assess "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595; see also 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms;

---

[2] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Craig, 76 F.3d at 595. If the ALJ does not find a claimant's statements to be credible, the ALJ must provide specific reasons supported by the evidence. 20 C.F.R. § 404.1529(c)(4); SSR 96–7P; see also Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985) ("credibility determinations…should refer specifically to the evidence informing the ALJ's conclusion"). "This duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (internal citations omitted).

Here, at the first step of Craig, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. Tr. at 21. At the second step, the ALJ evaluated the intensity and persistence of Plaintiff's pain and the extent to which it affected his ability to work. First, the ALJ discussed Plaintiff's testimony, his statements concerning pain levels, and other subjective complaints. See Tr. at 20. The ALJ noted, *inter alia*, Plaintiff's assertions about his educational background, work experience, history of mental health treatment, medications for his mental health conditions, herniated disc in his back, diagnosed bipolar disorder, former alcohol dependence, former homelessness, difficulty sleeping, fluctuating energy levels, diagnosed ADHD, difficulty working with other people and following instructions, and side effects from his medications. Id. In assessing Plaintiff's medical history and objective medical evidence of pain, the ALJ discussed Plaintiff's various ailments, as well as the doctor visits and treatment that he received for each. Id. at 20-21. He noted, *inter alia*, Plaintiff's complaints of gouty arthritis and pain in his left foot, back pain, arthritic condition,

alcohol dependence, insomnia, and his mental health history. Id. at 21. The ALJ discussed the medical evidence submitted by Drs. Bird, Holmes, Carraway, and Wall. Id. at 21-22.

In considering other evidence relevant to the severity of Plaintiff's mental and physical impairments, the ALJ discussed Plaintiff's activities of daily living (Id. at 18, 20). He noted that Plaintiff can care for his personal needs, use food stamps to purchase groceries, take care of his pet cat, wash clothes, and converse with his neighbors. Id. The ALJ also noted the location, duration, frequency, and intensity of his pain and other symptoms, describing Plaintiff's reports of pain and discomfort to the various medical professionals from which Plaintiff sought treatment between the spring of 2009 and the summer of 2011. Id. at 21-23. In discussing these incidents of treatment in the medical record, the ALJ discussed aggravating factors of Plaintiff's condition, the type, dosage, effectiveness and side effects of his medications; and other treatment measures. Id. at 20-23.

In light of his assessment of these factors, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they are inconsistent with [the ALJ's RFC]." Id. at 21. As noted above, if the ALJ does not find a claimant's statements to be credible, the ALJ must provide specific reasons supported by the evidence. 20 C.F.R. § 404.1529(c)(4); SSR 96–7P; see also Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985). Here, the ALJ stated that Plaintiff "alleges pain and discomfort….Although he has an objectively identifiable impairment that can reasonably cause pain, the objective evidence does not substantiate pain at a level which would preclude a full range of work." Tr. at 21.

The ALJ's decision does not clearly explain his particular reasons for finding Plaintiff's statements not to be fully credible. It is not obvious to the court what particular aspects of

Plaintiff's statements and/or testimony the ALJ found to conflict with the medical record as a whole. In reviewing the decision, the ALJ's credibility determination seems to be at least partially based on Plaintiff's reports of daily activities. Such a "consideration of daily activities is precisely the type of evaluation required under current case law" for credibility determinations. Pruitt v. Colvin, 5:13-CV-00124-MOC, 2014 WL 1713832 (W.D.N.C. Apr. 30, 2014) (citing Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994)). However, the ALJ fails to articulate which particular reports of Plaintiff's daily activities conflict with his complaints of disabling mental and physical conditions. The ALJ decision simply states:

> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by other factors discussed in this decision.

Id. at 23. Notably, the Commissioner's motion failed to articulate how the ALJ satisfied the duty of explanation in his credibility determination. The Commissioner simply argues that the ALJ "carefully explained" why Plaintiff's statements were not credible and refers the court to the entire six-page section of the ALJ decision on RFC without citing any examples.

The court finds that the ALJ has not satisfied his duty of explanation on the credibility determination. The ALJ first discredits Plaintiff's reports of daily activities without explanation, despite the extensive record documenting the ACTT team's weekly interactions with Plaintiff, medical records indicating Plaintiff's reports of daily activities to his psychologists and other doctors over the past several years, and Plaintiff's oral testimony before the ALJ at his hearing. The ALJ's second proffered explanation is nothing more than a vague reference to all "other

factors discussed in this decision." Upon review, it is not apparent to this court what factors the ALJ is referencing.

The court agrees with Plaintiff's second assignment of error and will remand this matter to the ALJ for further explanation on the issue of Plaintiff's credibility.

**4.** ***Third Assignment of Error: Vocational Expert Testimony***

Finally, Plaintiff argues that the ALJ's step four and step five determinations were not supported by substantial evidence because they were based on an improper hypothetical question posed to the vocational expert. Specifically, Plaintiff asserts that the ALJ's errors in discounting the limitations opined by Drs. Holmes and Bird and improper credibility determination resulted in an incomplete hypothetical to the vocational expert. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (internal citations omitted).

Here, the ALJ posed several hypothetical questions to the vocational expert based on the record and Plaintiff's testimony, which included questions with a range of work levels. Because the court has found that several of the ALJ's determinations that formed the basis for the hypothetical question posed to the vocational expert were not supported by substantial evidence, it will remand this matter to the ALJ. Thus, on remand, the ALJ will be required to consider all of Plaintiff's evidence and arguments anew (including any additional evidence) and explicitly consider the matters of due consideration to the opinions of the treating physicians and Plaintiff's credibility. If, after re-assessing the opinion evidence and credibility determination as instructed above, the ALJ develops a new RFC, he should move to the fifth step and determine whether

Plaintiff is able to perform work existing in substantial numbers in the national and local economies.

## V. CONCLUSION

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, Plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be remanded for further proceedings not inconsistent with this Order. While the court will not direct the Commissioner to assign this claim to a different ALJ (inasmuch as the court is still confident that this ALJ can fairly hear Plaintiff's claims), the court will require the Commissioner to notify this court in the event a civil action is filed after remand so that this court can conduct any subsequent review.

## ORDER

**IT IS, THEREFORE, ORDERED** that 1) the Plaintiff's Motion for Summary Judgment (#9) is **GRANTED** based on the ALJ's failure to properly evaluate the opinion evidence  and fully explain his credibility determination; 2) the Commissioner's Motion for Summary Judgment (#13) is **DENIED** without prejudice; 3) the decision of the Commissioner, denying the relief sought by Plaintiff, is **VACATED** and this action is **REMANDED** to the Commissioner to conduct a new hearing and consider, along with all other evidence of record, the opinions and records of Plaintiff's treating physicians and, if the ALJ chooses not to rely on or credit such

treating physician's opinion, the ALJ shall provide specific, legitimate reasons for doing so, all pursuant to Sentence Four of 42 U.S.C. § 405(g); and 4) this action is **DISMISSED**.

The Clerk of Court shall enter a Judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure consistent with this Memorandum of Decision and Order.

Signed: October 28, 2014

Max O. Cogburn Jr.
United States District Judge